IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EVS CODEC TECHNOLOGIES, LLC, SAINT LAWRENCE COMMUNICATIONS LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 2:18-CV-00343-JRG |
| LG ELECTRONICS, INC., LG ELECTRONICS USA, INC., LG ELECTRONICS MOBILECOMM U.S.A., INC., | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Mobilecomm U.S.A., Inc.'s (collectively, "LG") Second Renewed Motion to Transfer Pursuant to Forum Selection Clause (the "Transfer Motion") (Dkt. No. 73) and Motion for a Temporary Stay of this Litigation Pending Resolution of LG's Second Renewed Motion to Transfer (the "Stay Motion") (Dkt. No. 87) (collectively, the "Motions"). Having considered the Motions, briefing, and relevant authorities, the Court **GRANTS** the Transfer Motion and **DENIES AS MOOT** the Stay Motion for the reasons stated herein.

I. INTRODUCTION

Plaintiffs EVS Codec Technologies, LLC ("ECT") and Saint Lawrence Communications LLC ("SLC") (collectively, "Plaintiffs") allege that LG infringes U.S. Patent Nos. 6,795,805; 6,807,524; 7,151,802; 7,260,521; and 7,191,123 (collectively, the "Patents-in-Suit"). (Dkt. No.

1

70 (Third Amended Complaint).)[1] The Patents-in-Suit relate to the Enhanced Voice Services Codec Standard (the "EVS Standard"). The EVS Standard is a speech and audio compression technology that "enables vastly improved voice quality, network capacity and advanced features for voice services over Long Term Evolution ('LTE' or '4G') networks." (*Id.* ¶ 25.) Plaintiffs allege that LG infringes the Patents-in-Suit by "manufactur[ing], us[ing], s[elling], import[ing], and/or offer[ing] for sale [certain LG smartphones and electronic devices that] . . . contain[] the EVS Codec and/or practic[e] the EVS Standard in the United States." (*Id.* ¶¶ 44–45, 60–61, 77–78, 93–94, 112–13.)

LG asserts that Plaintiffs' claims are barred by a prior license agreement between SCL and LG. (Dkt. No. 75 ¶¶ 42–48 (Answer), ¶¶ 31–59 (Counterclaims I–III).) In 2014, SLC sued LG on the Patents-in-Suit in this District. *See Saint Lawrence Commc'ns LLC v. LG Elecs., Inc.*, Case No. 2:14-cv-01055-JRG, Dkt. No. 1 (E.D. Tex. Nov. 18, 2014). The parties settled the case, and entered into the AMR WB Standard Patent License Agreement (the "Agreement"). (Dkt. No. 73–1.) Pursuant to the Agreement, SLC granted LG a license and release to the Patents-in-Suit (*id.* §§ 2.12.2, 2.4), and agreed "not to sue [LG] . . . for infringement of any patents owned or controlled or licensable by [SLC] during the Term of th[e] Agreement ('Covenant Patents') solely with respect to LG Products for the life of such patents" (the "Express Covenant") (*id.* § 2.8). The parties further agreed as part of the Agreement to a forum selection clause, which provides that "[a]ny legal action or other legal proceeding relating to the interpretation or the enforcement of any provision of th[e] Agreement must be brought or otherwise commenced in a federal or state

---

[1] Plaintiff ECT first sued LG on August 6, 2018. (Dkt. No. 1.) The complaint was then amended three times: (1) the first amended complaint ("FAC") added SLC as a Plaintiff (Dkt. No. 24); (2) the second amended complaint ("SAC") added two declaratory judgment counts (Dkt. No. 45); and (3) the third amended complaint ("TAC") removed the two declaratory judgment counts that were added by the SAC (Dkt. No. 70). The TAC is the current operative pleading.

court in New York." (*Id.* § 11.1.) LG asserts that the Agreement's "[Express] [C]ovenant bars Plaintiffs' infringement claims," and that resolution of such argument will necessarily require interpreting the Agreement. (Dkt. No. 73 at 1, 11.) Since the Agreement's forum selection clause requires that all "legal actions . . . . relating to the interpretation . . . . of th[e] Agreement . . . be brought . . . in New York," LG argues that this "clause directly governs [the parties' dispute] and must be enforced." (Dkt. No. 73 at 2.) Accordingly, LG moves to transfer this case to the Southern District of New York under 28 U.S.C. § 1404(a).[2]

## II. LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A case may also be transferred under § 1404(a) if there is an applicable forum selection clause. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). If a party files such a motion, then "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* To make this determination, courts follow a two-step analysis.

The court first determines if the forum selection clause governs the dispute. *See Gen. Protecth Grp., Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011) [hereinafter *GPG*].[3]

---

[2] LG previously moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 38, 46.) However, in response to the latest amended complaint, LG only seeks to transfer the instant case "[t]o streamline the issues." (Dkt. No. 73 at 2 n.3.)

[3] A court may transfer a case to another forum under § 1404(a) only if venue is proper in the transferee forum. 28 U.S.C. § 1404(a). LG seeks transfer to the Southern District of New York, and the parties agree that venue therein is improper under the usual framework of 28 U.S.C. § 1404 and *TC Heartland LLC v. Kraft Foods Grp. Brands, LLC*, 137 S. Ct. 1514, 1519 (2017). (Dkt. No. 73 at 12–13 (LG's Transfer Motion); Dkt. No. 77 at 1 (Plaintiffs' Opposition to LG's Transfer Motion).) Notwithstanding this, transfer is permitted if "'all parties' to the action" have consented

3

In patent cases, the applicability of a forum selection clause often arises when a defendant asserts a defense based on a license agreement. *See, e.g.*, *Zix Corp. v. Echoworx Corp.*, No. 2:15-cv-01272-JRG, 2016 WL 7042221 (E.D. Tex. June 9, 2016). The Federal Circuit has held that a forum selection clause applies if the nexus between the case and the agreement at issue is "non-frivolous." *GPG*, 651 F.3d at 1359. A bare allegation that a license provides a defense to the claims in suit fails to meet this standard and will not trigger a forum selection clause. *Id.* Beyond this, however, the Federal Circuit has provided little guidance. Previously, this Court has used a less than one-half and nearer to the one-quarter standard when addressing forum selection clauses under § 1404(a). *See Zix*, 2016 WL 7042221 at *3. In *Zix*, this Court examined the continuum existing between a wholly frivolous assertion of a license defense and a conclusive showing of success on the merits to find the "attachment point" at which the asserted defense becomes "non-frivolous." *Id.* This Court concluded that the elusive attachment point is "almost assuredly . . . found before we reach the mid-point of the spectrum," and that it is probably "found nearer the one-quarter marker." *Id.*

If the court finds that the parties' dispute triggers a valid forum selection clause, then the "district court should ordinarily transfer the case to the forum specified in that clause [unless there are] . . . extraordinary circumstances unrelated to the convenience of the parties" that disfavor transfer. *Atl. Marine*, 571 U.S. at 62. "[T]his requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 63. "First, the plaintiff's choice of forum merits no weight" and

---

to the transferee forum. *Tessera Advanced Techs., Inc. v. Samsung Elecs. Co., Ltd. et al.*, No. 2:17-cv-00671-JRG, 2018 WL 8014281, at *3 n.1 (E.D. Tex. Sept. 5, 2018.). This Court has previously held that "a contractual forum-selection clause is the manifestation of the Parties' consent to use a particular forum." *Id.* Here, the parties to the Agreement "expressly and irrevocably consent[] and submit[] to the jurisdiction" of New York. (Dkt. No. 73–1 § 11.1.) Therefore, if the Agreement's forum selection clause applies to the parties' dispute, then the threshold inquiry under § 1404(a) has been satisfied.

"the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, [the] court . . . should not consider arguments about the parties' private interests" and "may consider arguments about public-interest factors only." *Id.* at 64. These public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law. *In re Volkswagen,* 371 F.3d 201, 203 (5th Cir. 2003) [hereinafter *Volkswagen I*]. This list is "not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) [hereinafter *Volkswagen II*]. The court should also assess these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Finally, when a forum selection clause controls, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Atl. Marine*, 571 U.S. at 64.

## III. DISCUSSION

### A. Applicability of the Forum Selection Clause

Section 11.1 of the Agreement provides:

11.1 This Agreement shall be governed by, interpreted and construed in accordance with the laws of New York, without reference to conflicts of law principles. Any legal action or other legal proceeding relating to the interpretation or the enforcement of any provision of this Agreement must be brought or otherwise commenced in a federal or state court in New York. Each Party expressly and irrevocably consents and submits to the jurisdiction of such state and federal courts in connection with any such legal proceeding.

(Dkt. No. 73–1 § 11.1.) Specifically, the Agreement states that "[a]ny legal action or other legal proceeding relating to the interpretation or the enforcement of any provision of this Agreement must be brought or otherwise commenced in a federal or state court in New York." (*Id.*)

The Agreement also contains a covenant-not-to-sue (the "Express Covenant"):

> 2.8 Covenant. Licensor, on behalf of itself, its subsidiaries, and their successors and assigns, hereby covenants not to sue Licensee, its Affiliates, their successors and assigns, direct or indirect customers, users, licensees, service providers, distributors, retailers, or direct and indirect suppliers for infringement of any patents owned or controlled or licensable by Licensor during the Term of this Agreement ('Covenant Patents') solely with respect to LG Products for the life of such patents.

(*Id.* § 2.8.) The Express Covenant applies to "LG Products," which are defined, *inter alia*, as "any service or product (including any technology or component within such product) commercially available to an End-User as of the Effective Date and any upgrades, enhancements and natural evolutions thereof now or hereafter . . . ." (*Id.* § 1.14.)

LG argues that Plaintiffs' claims are barred by the Express Covenant, and has asserted affirmative defenses and counterclaims to that effect. (Dkt. No. 73 at 9.) LG explains that under the terms of the Express Covenant, Plaintiffs may not accuse "LG Products" of infringing the Patents-in-Suit "during the Term of th[e] Agreement," and that "[a] comparison of [the Agreement's definition of 'LG Products'] with the [Plaintiffs' allegations] reveal[] that the accused products in this case meet the definition of 'LG Products.'" (*Id.* at 10.) For example, LG contends that the "accused EVS Codec constitutes an 'upgrade,' 'enhancement,' and/or 'natural evolution' of the AMR-WB Standard's codec, which is a 'technology' within LG products commercially available as of the Agreement's effective date." (*Id.*) LG also points out that Plaintiffs accuse "various LG G series mobile phones," such as the LG G5, LG G5, LG G6+, and LG G7 ThingQ products. (*Id.* at 10–11.) "These G series products are 'upgrades, enhancements, and natural evolutions' of earlier G series mobile phones that were commercially available before the

6

Agreement's effective date." (*Id.* at 11.) LG states that "even if Plaintiffs could fashion some argument that the Agreement's covenant does not cover their present infringement allegations, resolution of that argument would invariably require the Court to interpret the Agreement." (*Id.* at 11.) As a result, LG argues that the "Agreement's forum selection clause controls this action because the [Plaintiffs'] infringement claims relate to 'the interpretation' of the Agreement and LG's defense against these claims implicate 'the enforcement of' . . . the Agreement." (*Id.* at 8.)

Plaintiffs disagree and assert that transfer is not appropriate. They explain that the "infringement claims—on their face—do not invoke the . . . Agreement's forum selection clause" because the Third Amended Complaint "expressly states that it is not accusing any products covered under the . . . Agreement." (Dkt. No. 77 at 2–3 (citing Dkt. No. 70 ¶ 39 (stating that the allegations are "subject to the provisions of any prior license" and "do not accuse any service or product" that would be under the Express Covenant) (Third Amended Complaint)).) Plaintiffs also argue that, even if this were not the case, LG's defense would still be frivolous. Plaintiffs explain that the Agreement is limited to *only* (1) the AMR-WB Standard and (2) "LG Products" that existed before the Effective Date of the Agreement. (*Id.* at 7–9.)[4] By contrast, the accused products in this case relate to the EVS Standard, which is a different standard, and to products that were made after the Effective Date of the Agreement. (*Id.* at 9–13.) Plaintiffs submit that the accused products in this case are not "LG Products" covered by the Express Covenant, and therefore there is no circumstance in which the Agreement's forum selection clause could apply.

---

[4] For example, Plaintiffs state that: (i) the Agreement is titled the "AMR-WB Standard Patent License Agreement" (Dkt. No. 77 at 7); (ii) the license therein states that it "specifically excludes any rights under the Licensed Patents to practice any standard other than the AMR-WB Standard" (*id.* at 8); (iii) the release only applies to claims raised in connection with the AMR-WB Standard (*id.*); (iv) the Agreement only identifies technical specifications that are specific to the AMR-WB Standard (*id.*); and (v) the Agreement defines "LG Products" to only include those listed as well as "any upgrades, enhancements and natural evolutions *thereof*." (*id.* (emphasis added).)

(*Id.* at 9 (arguing that "LG's interpretation would expand the covenant to such an extent that it would devour the entire AMR-WB Agreement and render key provisions of the license contradictory and meaningless").) Finally, Plaintiffs argue that transfer is not warranted because LG has already filed suit in New York, alleging that Plaintiffs breached the forum selection clause by initiating the instant lawsuit. (*Id.* at 5.) *See also LG Elecs. Inc. v. Saint Lawrence Commc'ns LLC*, No. 1:18-cv-11082-DLC (S.D.N.Y. Nov. 28, 2018). Plaintiffs argue that by doing so, "LG itself has recognized that only this contract claim—and not [Plaintiffs'] infringement claims—is required to be brought in New York under the terms of the forum selection clause." (Dkt. No. 77 at 5.)

Having considered the parties' arguments, the Court finds that LG's defense is "non-frivolous" and triggers the Agreement's forum selection clause. *See GPG*, 651 F.3d at 1359. The forum selection clause states that "[a]ny legal action or other legal proceeding *relating to* the *interpretation of . . . any provision of this Agreement must* be brought or otherwise commenced in a federal or state court in *New York*." (Dkt. No. 73–1 §11.1 (emphasis added).) LG asserts that the Agreement's Express Covenant bars Plaintiffs' infringement claims, and "has come forward with colorable, factually specific arguments" that are more than a "bare allegation" to support its defense. *Uniloc USA, Inc. v. Cisco Sys., Inc.*, No. 6:15-cv-01175-JRG, 2017 WL 959856, at *4 (E.D. Tex. Mar. 13, 2017). (*See also* Dkt. No. 73 at 9–11 (identifying certain products that LG alleges are "LG Products" under the Express Covenant).). Plaintiffs oppose LG's reading of the Agreement and present their own interpretation of the Express Covenant. (*See generally* Dkt. No. 77.) Regardless of which interpretation prevails, resolving the parties' dispute will necessarily require the Court to interpret the Agreement— "an exercise the forum selection clause [explicitly] reserves for courts in New York." (Dkt. No. 73 at 11.) As a result, it would be improper to proceed

8

any further on the merits of this case. The Court must give credence to the forum selection clause, subject only to an analysis of the public factors under § 1404(a).[5]

## B. Public Interest Factors

Having found that the forum selection clause applies, the Court must next decide whether there are any "extraordinary circumstances" that nonetheless preclude transfer. *Atl. Marine*, 571 U.S. at 52. The Court limits its analysis to the public interest factors under § 1404(a), and finds no such circumstances exist. *Id.* at 64 (stating that the public interest "factors will rarely defeat a transfer motion").

### i. The Administrative Difficulties Flowing from Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

LG explains that after Plaintiffs filed the instant lawsuit, LG filed its own action against Plaintiffs in the Southern District of New York. *See LG Elecs. Inc. v. Saint Lawrence Commc'ns LLC*, No. 1:18-cv-11082-DLC (S.D.N.Y. Nov. 28, 2018) (the "New York Case"). In the New York Case, LG alleges that SLC has breached the Agreement's forum selection clause by initiating the present suit in this District. LG argues that "transferring this case to the Southern District of New York reduces court congestion by eliminating the need for separate cases addressing

---

[5] Plaintiffs argue that since LG has already filed suit in New York about the scope of the Agreement, LG is foreclosed from arguing that this case should *also* be litigated in New York. (Dkt. No. 77 at 5.) The Agreement's forum selection clause, however, is not limited to "one per customer." The clause clearly states that it applies to "*[a]ny* legal action," and therefore contemplates the possibility of *multiple* lawsuits being brought in New York that "relat[e] to the interpretation or enforcement of any provision of th[e] Agreement." (Dkt. No. 73–1 § 11.1 (emphasis added).)

overlapping issues in different districts and avoid[s] possible inconsistent rulings by two different courts over the same issues." (Dkt. No. 73 at 13.)

Plaintiffs disagree. They explain that "the New York court has not heard a prior case involving the patents-in-suit or issued any orders construing the claim terms" and "will likely need to invest substantial time and resources familiarizing itself with [this case]." (*Id.* at 14–15.) Plaintiffs also argue that the median time to trial in the Southern District of New York is 904 days whereas the median time in this District is only 711 days. (*Id.* at 15.)

Though the time to trial in this District is several months shorter than the Southern District of New York, the Court recognizes that the judge in the New York Case is already addressing the scope of LG's defense under the Agreement—an issue also present in this case. Accordingly, the Court finds that this factor weighs slightly against transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

"When considering the local interest factor, the court must look to the relevant factual connection between the events at issue and the two proposed venues." *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *8 (W.D. Tex. Apr. 5, 2017) (citing *Volkswagen II*, 545 F.3d at 317–18). LG argues that this factor weighs in favor of transfer because Plaintiffs' claims "are based on alleged nationwide infringement by LG's mobile phone products" and the "named defendants similarly lack a connection to this district." (Dkt. No. 73 at 14.) In response, Plaintiffs argue that since the Agreement settled a lawsuit that was previously before this Court, this District "has a unique interest in hearing a suit that LG now contends is foreclosed by that same settlement agreement." (Dkt. No. 77 at 14.) In settling the prior lawsuit in this Court, Plaintiffs could have named this District in the forum selection clause at issue. They did not.

10

The Court finds this factor slightly favors transfer. While Plaintiffs have a clear presence in the forum and the Agreement settled a lawsuit that was before this Court, Plaintiffs' infringement allegations do not have a specific nexus to any particular district. Critically, the Agreement requires that any dispute related to its interpretation be resolved in New York, and as such, the courts in New York have a localized interest in resolving the parties' dispute.[6]

### iii. The Familiarity of the Forum with the Governing Law

LG argues that this factor favors transfer to New York because (1) "[t]he Agreement's interpretation is governed by New York law;" and (2) the judges in the Southern District of New York are "equally familiar" with the patent laws implicated in this case. (Dkt. No. 73 at 14.) In contrast, Plaintiffs submit that this Court "has exceptional familiarity with the governing law," and that unlike this Court, the New York Court has not heard any cases involving the Patents-in-Suit. (Dkt. No. 77 at 14.) Even though this Court is capable of applying New York law, the Court recognizes that its sister courts in New York may be more familiar with the governing law implicated by the Agreement. However, this Court has experience in litigation regarding the Patents-in-Suit. According, the Court finds that this factor is neutral.

### iv. Avoidance of Unnecessary Conflicts of Law

LG submits that this factor is neutral (Dkt. No. 73 at 15), and Plaintiffs are silent on the issue. Accordingly, this factor is neutral.

On balance, the Court finds that the public factors do not present "extraordinary circumstances" that override the parties' contracted for forum selection clause.

---

[6] The Court's order dismissing the prior lawsuit did not retain jurisdiction over the settlement or the resulting Agreement. *See Saint Lawrence, LLC v. LG Elecs. Inc.*, No. 2:14-cv-01055-JRG, Dkt. No. 124 (E.D. Tex. Jan. 7, 2016).

### C. Plaintiffs' Alternative Request for a Stay

As an alternative to transfer, Plaintiffs request that the Court "temporarily stay the Texas action pending the New York action's resolution of LG's contract arguments." (Dkt. No. 77 at 5–6.) Plaintiffs argue that a stay is appropriate because the New York action will resolve the parties' dispute in both forums. (*Id.* at 6.) They explain that "[i]f LG prevails on its argument that the AMR-WB Agreement covers EVS and its new phones [in the New York case], then this will dispose of [Plaintiffs'] infringement claims. On the other hand, if LG's argument is rejected in the New York action, then the Court here in Texas will be in a position to deny LG's motion on that same basis." (*Id.*)

The Court finds that a stay is not appropriate in the face of an applicable forum selection clause. *Atl. Marine*, 571 U.S. at 52. The fact that LG has filed a suit involving the same Agreement in New York does not negate the fact that this case also "relat[es] to" the interpretation of the Agreement and must therefore be brought in New York. (*See* Dkt. No. 87 at 12.) There is also no guarantee that the case in New York will be resolved before this case goes to trial. The Court is not persuaded that staying the entire action pending the outcome of the New York litigation will necessarily result in a conservation of judicial resources or is in the best interests of the parties. Accordingly, in exercising its discretion to control its own docket, the Court denies Plaintiffs' request for a stay. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

### IV. CONCLUSION

Since the forum selection clause governs the parties' dispute in this case and there are no "extraordinary circumstances" that disfavor transfer, the Court is persudaded that it must transfer this case to the Southern District of New York. *See Atl. Marine*, 571 U.S. at 62. Accordingly., the Court **GRANTS** Defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG

Electronics Mobilecomm U.S.A., Inc.'s Second Renewed Motion to Transfer Pursuant to Forum Selection Clause (Dkt. No. 73), and it is **ORDERED** that Case No. 2:18-cv-00343-JRG is **TRANSFERRED** to the Southern District of New York. The Clerk of Court shall take all necessary steps to effectuate such transfer.

Having resolved the foregoing motion, the Court **DENIES AS MOOT** Defendants LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics Mobilecomm U.S.A., Inc.'s Motion for a Temporary Stay of this Litigation Pending Resolution of LG's Second Renewed Motion to Transfer (Dkt. No. 87).

**So ORDERED and SIGNED this 5th day of July, 2019.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE